### BAKER v. COBB. (No. 6372.)

(Court of Civil Appeals of Texas. San Antonio. April 7, 1920. Rehearing Denied April 28, 1920.)

1. Railroads ⟨key⟩277—Ejection of trespasser from moving freight train by unnecessary force or threats actionable.

A carrier is liable for ejection of a trespasser from its moving freight train if it used unnecessary force, or if by threats or violence it terrified him to such an extent as to cause him to believe that he could only save himself from bodily hurt by jumping off.

2. Railroads ⟨key⟩282(2)—Allegation that threats terrified trespasser jumping from moving freight train held not proved.

Allegations that the conductor caused plaintiff, a trespasser, to fear for his life so that he jumped from a moving freight train, are not supported by evidence that conductor merely told him he must get off, without making violent gestures, or even using profanity, where plaintiff testified that he was not afraid of the conductor.

3. Damages ⟨key⟩154—Defendant should plead aggravation of injuries by plaintiff.

While it may be that an injured person must show reason for failure to use adequate means

to effect a recovery and mitigate his damages rather than to aggravate them, it is the better practice for defendant to plead special facts showing contributory negligence by plaintiff in aggravating his injury.

Appeal from District Court, Comal County; R. E. McKie, Special Judge.

Action by Sam Cobb against James A. Baker, receiver of the International & Great Northern Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

S. W. Fisher, of Austin, for appellant.

Henne & Fuchs, of New Braunfels, and Marcus. W. Davis, of San Antonio, for appellee.

FLY, C. J. This is a suit for damages instituted by appellee against James A. Baker, as receiver of the International & Great Northern Railway Company, which it was alleged accrued by reason of appellee being forced by threats and violence to jump from a moving freight train. Appellant pleaded general denial, and that appellee was a trespasser on the train, and that he was guilty of contributory negligence in leaving the train while in motion. The cause was submitted to the jury on special issues, and upon the answers thereto judgment was rendered in favor of appellee for $3,000.

Appellee was undoubtedly a trespasser on the freight train and sought to account for his presence there on the ground that a man, who was accompanying the cattle being carried by the train, had invited him to ride. This was denied, however, by the cattleman. He did not claim that the conductor made any threat to put him off, or used violence or indicated that he would use violence. He swore that he had no words with the conductor, and that the latter did not curse him. He said:

"The conductor did not curse me or use any language of violence. He just told me that I had to get off; that I must get off. The conductor did not put his hands on me. He came at me. At the time, the cowboy was on the platform of the caboose."

Ben Tumlinson, whom appellee describes as the "cowboy," testified:

"I never, at any time, saw the conductor put his hands on the man, either to shove him off or to hit him. I never heard any abusive language, at any time, from the time the conductor got on until the time the man jumped off. * * * I never, at any time, heard the conductor say he was going to put him off the train."

The conductor swore:

"I never, at any time, placed my hands on this man and ejected him off the train. I never made any move toward him at all. I did not tell the man I was going to put him off the train. I never used any violent language towards the man at all."

The three practically agree on everything, except that appellee said the conductor "came at him," but he further stated that he was strong "and could lift a bale of cotton" and was not afraid of the conductor. He swore:

"I was not afraid of an average man at that time if I knew I was in the right. I knew that I could take care of myself all right. I wasn't afraid of anybody at that time. I wasn't afraid of anything, I had nothing to be afraid of."

In another part of his testimony, he stated he became excited, and yet he was not afraid. Again, he said he got off because the conductor told him he had to get off.

Appellee, in his petition, based his right to a recovery on the ground that the cattleman was in charge of the train and had invited him to ride, and that the conductor was informed by the cattleman that he had invited appellee to ride, but that the conductor cursed and abused appellee and threatened to throw him off the train, and caused appellee to fear for his life, and he jumped. There was not one word of testimony to sustain these allegations, nor does the testimony of appellee himself show any act or gesture or word that would create the impression that appellee would be thrown from the train while it was moving. While he alleged that he was "frightened and alarmed and not in full possession of his mental faculties, and under said fear and duress" jumped from the train, he swore positively that he was afraid of no man. "I wasn't afraid of anything; I had nothing to be afraid of."

We have, in considering the evidence, proceeded upon the theory that appellee swore to the truth, although there was evidence, coming from disinterested parties, to the effect that he stepped down on the lowest step of the caboose and jumped off and then fell, and that he stated at the time that he was not hurt. They also stated that the train was moving slowly. There was no order given by any agent of appellant for appellee to get off.

[1, 2] It is elementary that the allegata and the probata must correspond. They did not approach each other in this case. The petition states a cause of action, for, although appellee was a trespasser on the train and appellant had the right to eject him therefrom, it would be liable if it used unnecessary force, or if by threats or violence terrified him to such an extent as to cause him to believe that he could only save himself from bodily hurt by jumping off the train. But a mere statement that he must get off, without violent gestures or even profanity, would not justify a man of even ordinary courage in believing that he would be attacked and thrown from the moving train, nor would justify a trespasser in leaving a train moving at the rate of speed at which appellee swore

that the train of appellant was moving. Appellee swore that he was not afraid of anything and had no cause to be afraid. He had enough courage, vitality, and vigor left to shake his fist at the conductor when he struck the ground.

We do not think that the question as to whether the conductor had in the presence of appellee ordered the brakeman to apply the brakes and stop the train was an issue in the case. It was merely evidence tending to show that appellee, without reasonable cause, left the train and was guilty of contributory negligence. Special charge No. 4, requested by appellant and given by the court, was quite favorable to appellant and clearly applied the facts as to contributory negligence in jumping from the train to the law. The third and fourth assignments of error are overruled.

[3] The fifth assignment of error complains of the refusal to give a charge requested by appellant to the effect that the jury in assessing damages for the permanency of the rupture, or double hernia, which appellant claimed was produced by his jump from the train, should consider the acts of appellee in not having himself treated and taking no other precautions to cure the hernia or lessen its bad effects. It is the rule in Texas that contributory negligence must be proved by the defendant in order to constitute a defense, the only well-established exception to the rule being where the allegations of the petition or the proof offered by a plaintiff shows contributory negligence. Railway v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Railway v. Shaklee, 138 S. W. 188. While in some cases it seems to be intimated that contributory negligence may be proved under a general denial, it is a question not definitely settled. It has been held that the act of a plaintiff in not using means to mitigate or reduce the damages arising from an injury is a phase of contributory negligence and subject to the same rules of pleading and proof, and appellant did not plead it. Railway v. McMannewitz, 70 Tex. 73, 8 S. W. 66; Railway v. Shaklee, herein cited. While inclined to the opinion that appellee should have shown a reason for a failure on his part to use adequate means to effect a recovery and mitigate his damages, rather than aggravate them as his own testimony shows that he did, we believe it would be safer and the better practice for appellant to set up the facts showing contributory negligence on the part of appellee in aggravating the injuries he received by jumping from the train.

Assignments of error from the seventh to the twenty-first inclusive have either been discussed herein or are without merit and are overruled.

For the reason that the allegations in the petition are not supported by the evidence and that the verdict is not supported by the testimony, the judgment is reversed, and the cause remanded.